UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-CV-22739-KING

U.S. COMMODITY FUTURES TRADING
COMMISSION,

    Plaintiff,

vs.

SOUTHERN TRUST METALS, INC.,
LORELEY OVERSEAS CORPORATION,
and ROBERT ESCOBIO,

    Defendants.
_____/

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Defendants Southern Trust Metals, Inc., Loreley Overseas Corporation, and Robert Escobio's Motion for Summary Judgment (DE 66) and Plaintiff U.S. Commodity Futures Trading Commission's (the "Commission") Motion for Summary Judgment (DE 68).[1] The Court heard oral argument on the Commission's motion at the Pre-Trial Conference on January 7, 2016.

### I. INTRODUCTION

The Complaint (DE 1) alleges that Defendants Southern Trust Metals, Inc. ("ST Metals") and Loreley Overseas Corporation ("Loreley"), by and through their officers, employees, and agents, including Defendant Robert Escobio, operated a scheme in which Defendants defrauded retail customers in connection with illegal, off-exchange, financed

---

[1] The Court has additionally considered the parties respective Statements of Facts, and the responses and replies to each motion.

1

precious metals transactions, in violation of sections 4(a), 4b(a)(2)(A), (B), (C), 4d, and 6(c) of the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 6(a), 6b(a)(2)(A), (B), (C), 6d, and 9 (2012), and Commission Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2013). The Complaint further alleges that Defendants ST Metals and Escobio violated the Act by acting as a futures commodity merchant ("FCM") without being registered with the Commission.

Count I alleges that Defendants ST Metals and Loreley violated the Act by offering, entering into, and executing off-exchange financed retail commodity transactions. Defendant Escobio is allegedly liable for ST Metals and Loreley's actions as a controlling person of ST Metals and Loreley.

Count II alleges that Defendant ST Metals made intentional and knowing misrepresentations to customers in off-exchange financed retail commodity transactions. Defendant Escobio is allegedly liable for ST Metals' actions as a controlling person of ST Metals.

Count III alleges that Defendant ST Metals further violated Commission Regulation 180.1(a) by employing deceptive devices in the transactions referred to in Count I. Defendant Escobio is allegedly liable for ST Metals' actions as a controlling person of ST Metals.

Count IV alleges that Defendant ST Metals further violated the Act by acting as an FCM (by 1) offering and executing financed retail commodity transactions and 2) accepting money for and placing futures orders) without being registered with the Commission as an FCM. Defendant Escobio is allegedly liable for ST Metals' actions as a controlling person of ST Metals.

### A. The Commission's Motion for Summary Judgment

In its motion, the Commission seeks summary judgment solely as to liability on Count I, against ST Metals, Loreley, and Escobio, and as to liability on Count IV, against ST Metals and Escobio, arguing the undisputed facts show that Defendants engaged in off-exchange financed commodity transactions with retail customers and accepted and placed futures orders without being registered as an FCM.

### B. Defendants' Motion for Summary Judgment

In their motion, Defendant Escobio seeks summary judgment as to every claim raised in the Complaint and Defendants ST Metals and Escobio seek summary judgment as to Count IV of the Complaint.[2] Defendant Escobio argues the Commission is barred, i.e., that it should be equitably estopped, from pursuing any claims against him pursuant to the terms of a settlement agreement (DE 67-25) executed between Mr. Escobio and Southern Trust Securities, Inc. (which is not a party to the above-styled action) on one hand and the National Futures Association ("NFA") on the other hand. Defendants ST Metals and Escobio argue that Count IV fails because ST Metals' off-exchange financed retail commodity transactions do not fall into the purview of the Commission's authority due to an exception found in the Act, and it cannot be found to have otherwise acted as an FCM because none of the accounts at ST Metals were opened for the purpose of trading futures, and therefore ST metals did not accept any money for futures orders.

---

[2] Defendants' motion seeks summary judgment as to all Defendants on Count IV, but the allegations of Count IV concern only Defendants ST Metals and Escobio.

3

## II. BACKGROUND

The following facts are undisputed by the parties:

ST Metals, located in Coral Gables, Florida, is a wholly-owned subsidiary of Loreley, a British Virgin Islands corporation. DE 69, at ¶¶ 29-30. Loreley, in turn, is a wholly-owned subsidiary of Southern Trust Securities Holding Company ("Holding Company"), another Florida company. *Id.* Robert Escobio was CEO, director, and the largest individual shareholder of the Holding Company during all times relevant to this case. *Id.* ¶ 31.

During the period of June 2011 through April 2013, ST Metals marketed and sold investments in precious metals such as gold, silver, and platinum. DE 69, at ¶ 1. ST Metals offered two types of metals investments to customers. The first type, which is not at issue in this case, involved customers paying in full and up-front for precious metals. DE 84 ¶ 2. The second type involved ST Metals accepting money and orders from customers to invest in precious metals on a margined or leveraged basis. DE 69, at ¶ 1. This second type, referred to by the Commission as the "ST Metals leveraged metals program," is the subject of Counts I and IV of the Commission's Complaint. It is additionally undisputed that ST Metals placed futures and options orders with UK firms on behalf of certain clients, and this conduct is also the subject of Count IV. *Id.* ¶ 21–22.

When a customer placed an order with ST Metals for leveraged metals, ST Metals' employees would transfer the customer's money to Loreley. *Id.* ¶ 16. Loreley, in turn, would transfer the money to either Hantec Global Markets, Ltd. ("Hantec") or Berkeley Futures Ltd. ("Berkeley"), where ST Metals' employees would place trades corresponding to customer positions. *Id.* Hantec and Berkeley are margin trading firms located in the UK. *Id.* ST Metals also placed orders for commodity futures for certain customers. *Id.* ¶ 21–22.

4

Those orders were placed by ST Metals at Berkeley; Berkeley then placed those orders on a U.S. futures exchange through an affiliate. *Id.* ¶ 23.

On March 28, 2014, Escobio and Southern Trust Securities, Inc. ("ST Securities"), another wholly-owned subsidiary of the Holding Company, entered into a settlement with the NFA, the private self-regulatory organization for the futures industry. DE 78, at ¶ 81. ST Securities was a member of the NFA, and Escobio was registered with the NFA as an associated person. The settlement resolved charges by the NFA that Escobio and ST Securities had violated certain member rules: Rule 2-4, for operating an unregistered futures commission merchant, i.e., ST Metals; and Rule 2-5, for failing to report customer complaints against a certain broker. *Id.* The NFA settlement contained a release stating that the settlement would "resolve and terminate all complaints, investigations and audits." DE 67, at ¶ 38. The Commission was not a party to the settlement. *See* DE 67-25.

### III. LEGAL STANDARD

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the record as a whole could not lead a rational fact-finder to find for the nonmoving party, there is no genuine issue of fact for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the burden of pointing to the part of the record that shows the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to

the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) (holding that the nonmoving party must "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact.").

On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment. *See id.* at 252. If the evidence offered by the nonmoving party is merely colorable or is not significantly probative, summary judgment is proper. *See id.* at 249–50.

## IV. DISCUSSION

### A. Defendant Escobio's Settlement with the NFA

Defendant Escobio argues that the Commission's claims against him are barred by the settlement he entered into with the NFA in March of 2014. The settlement states, *inter alia*,

> . . . the [Hearing] Panel's acceptance of this Offer of Settlement shall operate to bar any future M[ember] R[esponsibility] A[ction] or [Hearing] Panel Complaints against [Defendant] for any conduct occurring prior to the date of this Offer of Settlement, of which NFA has corporate knowledge . . . [and] the [Hearing] Panel's acceptance of this Offer of Settlement shall resolve and terminate all complaints, investigations and audits relating to them, which are pending as of the date of this Offer of Settlement . . . .

DE 67-25, at ¶ K. The parties to the settlement are Defendant Escobio, ST Securities, and the NFA. DE 67-25. Irrespective of the fact that the Commission is not a party to the settlement, Defendant argues that the NFA is the "enforcement arm" of the Commission, the Commission was aware of the settlement, the Commission "did nothing to discourage Mr.

6

Escobio's understanding that he was in fact settling all 'investigations' with regulators and in fact did much to encourage it[,]" and Defendant Escobio relied on his expectation that the settlement would terminate all complaints and investigations against him, and so the settlement must apply to bar the Commission's prosecution of this action. *See* DE 66 (emphasis in original).

Defendant argues that the language of the settlement applies to bar the instant action being brought by the Commission, or, alternatively, that the Commission should be equitably estopped from bringing this action. Both arguments fail. While Defendant points to various communications between NFA and the Commission as evidence that they shared investigative materials and otherwise coordinated their efforts, there is nothing unlawful about two regulators sharing investigative information and such sharing does not bind one to settlements made by the other. *See Graham v. SEC*, 222 F.3d 994, 1007 (D.C. Cir. 2000); *see also Jones v. SEC*, 115 F.3d 1173, 1179 (4th Cir. 1997).

The Court finds that the settlement is not binding against the Commission for the following reasons: 1) Defendant has failed to adduce any evidence to dispute Plaintiff's evidence that the NFA is a private industry self-regulatory agency, which constitutes no part of the government or the Commission, 2) the Commission is not a party to the settlement, and 3) courts have consistently held that settlements with self-regulatory agencies do not bar subsequent claims by government regulators, even for the same conduct, *see, e.g., Jones*, 115 F.3d at 1179. Moreover, with respect to his estoppel argument, the only evidence of detrimental reliance is Escobio's self-serving deposition testimony that he thought the settlement would preclude all future enforcement actions, and there is no evidence which suggests this belief was reasonable under the circumstances. Indeed, the Commission has

7

adduced evidence showing that Escobio was aware the Commission was planning to bring its own enforcement action, Escobio's counsel made statements to NFA orally and in writing expressing counsel's expectation and understanding that a Commission enforcement action would follow the NFA settlement, and Escobio's counsel continued to produce documents in response to the Commission's requests without protest, even after the NFA settlement was signed. DE 78-1, Ex. C.; DE 78-2, Ex. K.

Accordingly, Defendants' motion, to the extent that it seeks summary judgment in reliance upon Defendant Escobio's settlement with the NFA acting as a bar to this action, is denied.

## B. Count I – Engaging in Off-Exchange Financed Retail Commodity Transactions

The Commission moves for summary judgment on Count I of the Complaint, which alleges that Defendants' leveraged metals program violates section 4(a) of the Act. Section 4(a) provides that it shall be unlawful for any person to enter into, or offer to enter into, a contract for the purchase or sale of a commodity for future delivery, unless such contract is executed on or subject to the rules of a registered exchange. The Commission's authority to ensure that commodity transactions occur on regulated exchanges extends to cover financed, margined, or leveraged commodity transactions with retail customers, defined as customers with less than $10 million in discretionary income under management (or $5 million under management, if they are engaged in hedging activities). 7 U.S.C. §2(c)(2)(D)(i)(I); 7 U.S.C. §1a(18).

While it is undisputed that they engaged in off-exchange financed retail commodity transactions, Defendants argue that the commodity transactions at issue are not subject to section 4(a) due to the "actual delivery" exception found in section 2(c)(2)(D). Pursuant to

8

section 2(c)(2)(D), transactions which result in actual delivery of the underlying commodity within 28 days of the execution date are not subject to section 4(a). The actual delivery exception is an affirmative defense and the burden to prove its applicability lies with Defendants. *See FTC v. Morton Salt*, 334 U.S. 37, 44-45 (1948).

Defendants contend that the UK firms through which they placed the commodity transactions took delivery of physical precious metals on behalf of Defendants' clients through depository banks in the UK. Plaintiff's position is that there were never any physical metals delivered to anyone, and that Defendants were merely speculating in physical metals futures, despite representing otherwise to their clients.

The record demonstrates that Defendants entered into financed commodity transactions with retail customers, and that these leveraged commodity transactions were not traded on any exchange. DE 69-3, Exs. 3, 4; DE 69-4, Exs. 5, 6; DE 69-5, Ex. 7; DE 69-6, Ex. 8; DE 69-7, Exs. 10, 11, 13. And, for their part, Defendants have failed to adduce any evidence of actual delivery of any physical gold related to these financed commodity transactions.

Therefore, Defendants have failed to establish their burden of proving actual delivery of metals took place for their leveraged metals customers, and the Commission is entitled to summary judgment as to liability on Count I.

## C. Count IV – Acting as an FCM without Registering as an FCM

The parties both move for summary judgment as to Count IV, which alleges that ST Metals acted as an FCM without first registering with the Commission, in violation of section 4d of the Act, and that Defendant Escobio is liable for ST Metals' actions as a controlling person of ST Metals.

The Act defines an FCM as a person or organization that is engaged in soliciting or accepting orders for commodities or commodity futures, and who accepts money, securities, or property to margin, guarantee, or secure any trades or contracts that result therefrom. 7 U.S.C. § 1(a)28. The Commission argues that it has established Defendants ST Metals and Escobio violated the Act through unlawfully acting as an FCM by: 1) accepting orders for the off-exchange retail commodity transactions that are the subject of Count I and 2) accepting money and orders for the purchase or sale of commodity futures and options.

As entities that engaged in the transactions that are the subject of Count I, Defendants were required to have registered with the Commission as FCMs. It is undisputed that Defendants are not registered with the Commission as FCMs. Accordingly, it is beyond dispute that Defendants have acted in violation of section 4d of the Act, and the Commission is additionally entitled to summary judgment as to liability on Count IV.

## D. Escobio's Controlling Person Liability Under Section 13(b)

The Commission also seeks summary judgment on its claim for control person liability against Escobio under section 13(b) of the Act, 7 U.S.C. § 13c(b). In order to demonstrate control person liability, the Commission must show that Escobio: (1) had "general control" over the primary violator; and (2) lacked good faith, or knowingly induced the acts constituting the violation. *CFTC v. RJ Fitzgerald & Co., Inc.*, 310 F.3d 1321, 1334 (11th Cir. 2002), *cert. denied*, 543 U.S. 1034 (2004); *Hunter Wise*, 1 F. Supp. 3d at 1322-24.

### i. Escobio Had General Control Over ST Metals and Loreley

General control exists where the defendant is "an officer, founder, principal, or the authorized signatory on the company's bank accounts." *Hunter Wise*, 1 F. Supp. 3d at 1322-24. The Commission has adduced evidence showing that Escobio was the founder of ST

10

Metals, as well as the founder, CEO, director, and largest shareholder in the Holding Company, which owns both ST Metals and Loreley. DE 69-6, Ex. 9; DE 69-7, Exs. 10, 11. Moreover, the Commission has adduced evidence that Escobio had power of attorney to act on behalf of ST Metals and Loreley. DE 69-6, Ex. 9; DE 69-7, Ex. 10. Escobio was a signatory to ST Metals and Loreley's bank accounts, and had authority to transfer money to or from those accounts. DE 69-1, Ex. 1; DE 69-6, Ex. 9; DE 69-7, Exs. 14, 17. Escobio travelled to London and opened Loreley's margin trading accounts at Hantec and Berkeley, and had authority over trading in those accounts. DE 69-5, Ex. 7; DE 69-6, Ex. 8; DE 69-6, Ex. 9; DE 69-7, Ex. 10. Moreover, Escobio's office was on the same floor as ST Metals's brokers; at least one ST Metals employee testified that he was personally hired by Escobio; another wrote that Escobio was his "boss." DE69-6, Ex. 9; DE 69-7, Exs. 10, 12, 13.

Escobio does not dispute these facts, but argues that his post-Dodd Frank involvement in ST Metals's leveraged metals business was "minimal." This misses the point. For controlling person liability, "the focus is upon the power to control, not whether that power is actually exercised." *CFTC v. Gibraltar Monetary Corp.*, No. 04-80132-CIV, 2006 WL 1789018, at *18-19 (S.D. Fla. May 30, 2006), *aff'd*, 575 F.3d 1180 (11th Cir. 2009). It is clear from the record that Escobio had the power to control ST Metals. Defendants offer no evidence to the contrary.

### ii. Escobio Did Not Act in Good Faith

In order to establish a lack of good faith, the Commission must demonstrate that Escobio failed to maintain a "reasonably adequate system of supervision and control," or failed to oversee the system with "reasonable diligence." *CFTC v. Hunter Wise Commodities, LLC*, 21 F. Supp. 3d 1317, 1350 (S.D. Fla. 2014). The Commission supports

11

its claim with testimony from Escobio that ST Metals had no directors, officers, or managers, and no legal or compliance departments. DE 69-6, Ex. 9; DE 69-7, Exs. 10, 12, 14. Escobio testified that the absence of management was a deliberate choice, undertaken pursuant to the advice of counsel. DE 69-7, Ex. 10. Defendants fail to adduce any evidence of reasonably adequate controls at ST Metals. Defendants argue that controls were unnecessary because Mr. Nurmohamed told Escobio that Hantec was "Dodd-Frank compliant." Defendants' circular reasoning fails to controvert the Commission's evidence that no system of internal controls existed at ST Metals.

### iii. Escobio Knowingly Induced ST Metals' and Loreley's Violations.

To establish knowing inducement, the Ccommission may show that "the controlling person had actual or constructive knowledge of the core activities that constitute the violations at issue and allowed them to continue." *R.J. Fitzgerald & Co.*, 310 F.3d at 1334. The Commission points to Escobio's own testimony that he was aware during the relevant period that ST Metals was engaged in off-exchange leveraged commodities transactions with retail customers. DE 69-6, Ex. 9; DE 69-7, Ex. 11. The Commission also points to emails showing that Escobio entered futures trades for ST Metals's customers, and that Escobio received statements from Hantec and Berkeley detailing the margined derivatives and futures trades made by Loreley on behalf of ST Metals's customers. DE 69-7, Ex. 10. Escobio does not dispute these facts, but claims that he should not be held liable because he was not aware these transactions were illegal. Ignorance of the law is no defense, however, and Escobio cannot avoid liability under section 13(b) by "deliberately or recklessly avoiding knowledge about potential wrongdoing." *Hunter Wise*, 1 F. Supp. 3d at 1322-24.

The Commission has adduced sufficient evidence that Escobio was a control person within the meaning of Section 13(b), and Escobio has failed to controvert that evidence. The Commission's motion for summary judgment as to Defendant Escobio's controlling person liability under section 13(b) is therefore granted as to Counts I and IV.

## V. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff COMMODITY FUTURES TRADING COMMISSION's Motion for Partial Summary Judgment **(DE 68)** be and the same is, hereby **GRANTED**. Defendants ROBERT ESCOBIO, SOUTHERN TRUST METALS, INC., and LORELEY OVERSEAS CORPORATION's Motion for Summary Judgment **(DE 66)** be, and the same is, hereby **DENIED**. Judgment shall be entered separately in favor of Plaintiff COMMODITY FUTURES TRADING COMMISSION and against Defendants SOUTHERN TRUST METALS, INC., LORELEY OVERSEAS CORPORATION, and ROBERT ESCOBIO as to Count I of the Complaint, and against Defendants SOUTHERN TRUST METALS, INC. and ROBERT ESCOBIO as to Count IV of the Complaint.

**DONE AND ORDERED** in Chambers, United States District Court for the Southern District of Florida, this 7th day of April, 2016.

*/s/ James Lawrence King*
HONORABLE JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

cc: Counsel of Record