UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-22739-Civ-KING/TORRES

U.S. COMMODITY FUTURES
TRADING COMMISSION,

        Plaintiff,

v.

SOUTHERN TRUST METALS, INC.,
LORELEY OVERSEAS CORPORATION,
and ROBERT ESCOBIO

        Defendant.
_____/

**SUPPLEMENTAL REPORT AND RECOMMENDATION
ON PLAINTIFF'S MOTION FOR AN ORDER TO SHOW CAUSE WHY
ESCOBIO SHOULD NOT BE HELD IN CONTEMPT OF COURT**

      This matter is before the Court on the U.S. Commodity Futures Trading Commission's ("Plaintiff") Motion for an Order to Show Cause ("Motion") on why Robert Escobio ("Escobio") should not be held in contempt of Court. [D.E. 195]. On May 15, 2017, the Court issued its Report and Recommendation (the "R&R") [D.E. 11], which recommended granting in part and denying in part Plaintiff's Motion. Escobio objected to the R&R and argued the U.S. Supreme Court's recent decision in *Kokesh v. S.E.C.*, 137 S. Ct. 1635 (2017), compels the conclusion that the restitution ordered in this case is a money judgment despite the R&R's conclusion that restitution is an equitable remedy. On June 29, 2017, the Honorable James

1

Lawrence King directed the undersigned to provide a supplemental Report and Recommendation that considers the *Kokesh* decision and its impact, if any, on the facts of this case. After careful consideration of Escobio's objections to the R&R, Plaintiff's response in support thereof, Escobio's reply, and the relevant authority, we find that all of the supplemental authority that Escobio relies upon does not alter the conclusion that Plaintiff's Motion should be **GRANTED in part** and **DENIED in part**.

### I.   ANALYSIS

#### A.   *The Kokesh Decision*

On June 5, 2017, the U.S. Supreme Court issued its decision in *Kokesh v. S.E.C.*, where the Court addressed the question of whether the five year statute of limitations provided in 28 U.S.C. § 2462 applies to claims for disgorgement imposed as a sanction for violating a federal securities law. The Court held that disgorgement is a "penalty" within the meaning of § 2462 and that disgorgement actions must be commenced with five years of the date a claim accrues.

Escobio filed a Notice of Supplemental Authority on June 7, 2017 and argued that the decision in *Kokesh* supports his objections to the conclusions made in the R&R. [D.E. 214]. Specifically, Escobio argued that *Kokesh* refutes the R&R's purported assumption that an equitable remedy can never be legal relief and that the decision makes the R&R's errors irrefutably clear. Escobio contended that *Kokesh* focused on the *substance* of the disgorgement remedy in relation to traditional court

2

definitions of a penalty. Escobio also speculated that if the R&R's conclusions were correct, the Court in *Kokesh* would have devoted enormous attention to the fact that disgorgement is an equitable remedy and that a penalty is a legal remedy. Because the Court merely noted that disgorgement was an equitable remedy and still found that it constituted a penalty under § 2462, Escobio suggested that it should similarly make no difference in deciding whether customer loss restitution under 7 U.S.C. § 13a-1(d)(1) is a money judgment. Customer loss restitution supposedly meets every definition for a money judgment and therefore *Kokesh* allegedly demonstrates that the *substance* of the remedy is all that matters when determining whether restitution is subject to the power of contempt.

On June 13, 2017, Plaintiff filed a response in support of the R&R and argued that *Kokesh* actually undermines Escobio's position. In particular, Plaintiff contended that the Court's holding related to whether disgorgement is a "penalty" within the meaning of the Security and Exchange Commission's (the "SEC") five year-statute of limitations – an issue allegedly not relevant to this action. Plaintiff pointed out that the Supreme Court nowhere suggested that disgorgement or restitution were not equitable remedies enforceable through contempt. To the contrary, Plaintiff asserted that the Supreme Court recognized that courts order disgorgement in SEC cases "as an exercise of their 'inherent equity power to grant relief ancillary to an injunction.'" *Kokesh*, 137 S. Ct. at 1640 (*SEC v. Texas Gulf Sulphur Co.,* 312 F. Supp. 77, 91 (S.D.N.Y. 1970)). As such, Plaintiff believes that

3

*Kokesh* has no relevance to the statutory questions presented and that Escobio's arguments are entirely misplaced.

After full consideration of the arguments presented, Escobio's reliance on *Kokesh* lacks any merit. In *Kokesh*, the Court found that claims for disgorgement imposed as a sanction constitutes a "penalty" within the meaning of 28 U.S.C. § 2462 and therefore triggers the five year statute of limitations. Specifically, § 2462 mandates that the statute of limitations applies to any "action, suit or proceeding for the enforcement of any civil fine, *penalty*, or forfeiture, pecuniary or otherwise." 28 U.S.C. § 2462 (emphasis added). Before Congress authorized the SEC to seek monetary civil penalties, courts ordered disgorgement as an exercise of their inherent equitable powers. Generally, "disgorgement is a form of '[r]estitution measured by the defendant's wrongful gain'" and "requires that the defendant give up 'those gains . . . properly attributable to the defendant' interference with the claimant's legally protected rights.'" *Kokesh*, 137 S. Ct. at 1640 (internal citations omitted). Although the SEC acquired the full panoply of enforcement tools in 1990, the SEC continued its practice of seeking disgorgement alongside its pursuit of monetary penalties and injunctive relief.

In reaching its holding, the Court first made clear that the definition of a penalty is a "'punishment, whether corporal or pecuniary, imposed and enforced by the State, for a crime or offen[s]e against its laws.'" *Kokesh*, 137 S. Ct. at 1642 (quoting *Huntington v. Attrill,* 146 U.S. 657, 667 (1892)). As such, a penalty gives

4

rise to two main principles: "[f]irst, whether a sanction represents a penalty turns in part on 'whether the wrong sought to be redressed is a wrong to the public, or a wrong to the individual'" and "[s]econd, a pecuniary sanction operates as a penalty only if it is sought 'for the purpose of punishment, and to deter others from offending in like manner' — as opposed to compensating a victim for his loss.'" *Kokesh*, 137 S. Ct. at 1642 (quoting *Huntington,* 146 U.S. at 668).

The Court found that there was little doubt that SEC disgorgement met the first principle because the remedy operated as a consequence for violations of public laws.  *See Kokesh*, 137 S. Ct. at 1643 ("The violation for which the remedy is sought is committed against the United States rather than an aggrieved individual—this is why, for example, a securities-enforcement action may proceed even if victims do not support or are not parties to the prosecution."); *see also S.E.C. v. Teo*, 746 F.3d 90, 102 (3d Cir. 2014) ("[T]he SEC pursues [disgorgement] 'independent of the claims of individual investors'" in order to "'promot[e] economic and social policies'"); *S.E.C. v. Rind*, 991 F.2d 1486, 1490 (9th Cir. 1993) ("[D]isgorgement actions further the Commission's public policy mission of protecting investors and safeguarding the integrity of the markets").  In other words, a remedy bears the hallmark of a penalty when a violation is committed against the United States – not an aggrieved individual – and this distinction explains why the SEC for example may file suit even if victims do not support the action or are not parties to the prosecution.  Because the government in *Kokesh* conceded that "'[w]hen the SEC seeks disgorgement, it

5

acts in the public interest, to remedy harm to the public at large, rather than standing in the shoes of particular injured parties,'" *Kokesh*, 137 S. Ct. at 1643, the Court found that SEC disgorgement met the first characteristic of a penalty.

Second, the Court determined that SEC disgorgement has long been imposed for a punitive purpose. *See Kokesh*, 137 S. Ct. at 1643. The Court found that, since the first cases where the SEC began seeking disgorgement, it became "clear that deterrence [was] not simply an incidental effect of disgorgement," but that courts imposed it with the primary purpose to deter violations of the securities laws. *Id.*; *see also S.E.C. v. Fischbach Corp.*, 133 F.3d 170, 175 (2d Cir. 1997) ("The primary purpose of disgorgement orders is to deter violations of the securities laws by depriving violators of their ill-gotten gains.") (citations omitted); *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1996) ("The primary purpose of disgorgement as a remedy for violation of the securities laws is to deprive violators of their ill-gotten gains, thereby effectuating the deterrence objectives of those laws"); *Rind*, 991 F.2d at 1491 ("'The deterrent effect of [an SEC] enforcement action would be greatly undermined if securities law violators were not required to disgorge illicit profits'"). As such, SEC disgorgement met the second characteristic of a penalty because its purpose has been routinely used to deter infractions of public laws as a punitive measure even though "'deterrence [is] not [a] legitimate nonpunitive governmental objectiv[e].'" *Kokesh*, 137 S. Ct. at 1643 (quoting *Bell v. Wolfish,* 441

6

U.S. 520, 539, n.20 (1979)); *see also United States v. Bajakajian,* 524 U.S. 321, 329 (1998) ("Deterrence . . . has traditionally been viewed as a goal of punishment").

Moreover, the Court took particular issue with the government's contentions that disgorgement was not punitive. The Court found that it was not clear that disgorgement returned a defendant to the place he would have occupied had he not broken the law. For example, sometimes SEC disgorgement exceeded the profits gained as a result of the violation. *See Kokesh*, 137 S. Ct. at 1644 ("'[A]n insider trader may be ordered to disgorge not only the unlawful gains that accrue to the wrongdoer directly, but also the benefit that accrues to third parties whose gains can be attributed to the wrongdoer's conduct.'") (quoting *SEC v. Contorinis,* 743 F.3d 296, 302 (2d Cir. 2014). This allowed SEC disgorgement to operate in a way where individuals who illegally provided confidential insider information were forced to disgorge profits – gained by individuals who traded based on that information – even when the defendant never received profits from the illegal activity. *See SEC v. Warde,* 151 F.3d 42, 49 (2nd Cir. 1998) ("A tippee's gains are attributable to the tipper, regardless whether benefit accrues to the tipper"); *SEC v. Clark,* 915 F.2d 439, 454 (9th Cir. 1990) ("[I]t is well settled that a tipper can be required to disgorge his tippees' profits"). In other cases, SEC disgorgement was ordered without any consideration of a defendant's expenses to reduce the illegal profit. Therefore, "disgorgement [did] not simply restore the status quo; it le[ft] the defendant worse

off," and for that reason the remedy went beyond preventing unjust enrichment and expanded to deter violations of the securities laws.  *See Kokesh*, 137 S. Ct. at 1643.

Aside from the two primary characteristics of a penalty discussed above, the Court also found that SEC disgorgement was not compensatory because the way in which the "courts and the Government have employed the remedy, disgorged profits are paid to the district court," and that payment was within the court's discretion to determine the amount and "to whom the funds will be distributed."  *Kokesh*, 137 S. Ct. at 1644 (quoting *Fischbach Corp.*, 133 F.3d at 175).  In this manner, the Court found that some funds were paid to victims as a secondary goal whereas other funds were primarily paid to the U.S. Treasury.  *See Fischbach Corp.*, 133 F.3d at 175 ("Although disgorged funds may often go to compensate securities fraud victims for their losses, such compensation is a distinctly secondary goal").  And "when an individual is made to pay a noncompensatory sanction to the Government as a consequence of a legal violation, the payment operates as a penalty."  *Kokesh*, 137 S. Ct. at 1644 (citing *Porter v. Warner Holding Co.,* 328 U.S. 395, 402 (1946) (distinguishing between restitution paid to an aggrieved party and penalties paid to the Government)).  Because SEC disgorgement was (1) sought as a consequence for violations of public laws, (2) served a punitive purpose, and (3) was not compensatory, the remedy bore all the hallmarks of a penalty and was therefore subject to the statutory time limitations provided in 28 U.S.C. § 2462.

8

Escobio noticeably omits any discussion of these principles in his objections to the R&R. Instead, Escobio simply makes the blanket and conclusory argument that equitable restitution is a penalty – despite the statutory language indicating otherwise – because the Supreme Court in *Kokesh* failed to devote "enormous attention" to the fact that disgorgement is an equitable remedy and that a "penalty" is a legal relief. Putting aside Escobio's problem of basing an objection primarily on speculation of how the Court renders its decisions in light of the questions presented, the Court carefully explained why SEC disgorgement constitutes a "penalty," which reasoning has no relevance here. And upon closer inspection it becomes clear that there are critical distinctions when one juxtaposes the reasoning in *Kokesh* with the remedy of equitable restitution in this action.

As the Court explained in *Kokesh*, disgorgement is generally understood as a form of restitution measured by the defendant's wrongful gain and rooted in a court's equitable powers. However, Escobio ignores the Court's lengthy analysis – and the Court's limited holding – as to why SEC disgorgement went beyond the general confines of disgorgement and into the realm of a "penalty."[1] In particular, the Court acknowledged that SEC disgorgement has a long history of serving a punitive purpose, where courts "required disgorgement 'regardless of whether the disgorged

---

[1] Escobio may take the position that the Supreme Court held that disgorgement in general, and restitution as a form of disgorgement, always constitutes a "penalty" under all applicable statutes. Yet, this position is obviously incorrect because it ignores (1) the limited holding of *Kokesh*, (2) the enumerated test for determining a "penalty", (3) the fact that SEC disgorgement is not compensatory, and (4) the unique circumstances of how the SEC has prosecuted disgorgement as a punitive remedy.

9

funds will be paid to investors as restitution.'" *Kokesh*, 137 S. Ct. at 1644 (quoting *Fischbach Corp.*, 133 F.3d at 175).

By contrast, the facts of this case are materially different, especially where the CFTC seeks to make "whole each and every customer whose funds were received or utilized" and restore the status quo by prosecuting defendants in violation of the Commodities Exchange Act (the "CEA"). [D.E. 1]. Importantly, the CEA provides that any restitution be provided to the persons who sustained the relevant losses – not the U.S. Treasury:

> (3) Equitable remedies
>
> In any action brought under this section, the Commission may seek, and the court may impose, on a proper showing, on any person found in the action to have committed any violation, equitable remedies including—
>
> (A) *restitution to persons* who have sustained losses proximately caused by such violation (in the amount of such losses); and
>
> (B) disgorgement of gains received in connection with such violation.

7 U.S.C. § 13a-1(d)(3) (emphasis added).

And aside from the clear statutory language that labels the remedy under § 13a-1(d)(3) as equitable restitution, the substance of the remedy is equitable in nature. As the Supreme Court explained long ago in *Porter* – and relied upon in *Kokesh* – restitution is different from a penalty when the former restores the status quo and returns what rightfully belongs to the purchaser. "Such action is within the recognized power and within the highest tradition of a court of equity." *Porter v. Warner Holding Co.*, 328 U.S. 395, 402 (1946). Yet, if a party seeks restitution but

10

requests that an award be provided primarily to the U.S. Treasury, that type of relief may constitute a penalty. *See id*. The facts of this case fall clearly within the realm of equitable restitution given the statutory language that limits the availability of any relief to be provided to customers who suffered the relevant losses. By sidestepping any substantive discussion of *Kokesh* and merely making conclusory arguments that equitable restitution under the CEA constitutes a "penalty," Escobio fails to understand, or chooses to ignore, the contours of the Court's decision and the underlying reasons for its holding.

Furthermore, the Eleventh Circuit has previously determined that the CEA is not punitive, but "a remedial statute that serves the crucial purpose of protecting the innocent individual investor-who may know little about the intricacies and complexities of the commodities market-from being misled or deceived." *Commodity Futures Trading Comm'n v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1329 (11th Cir. 2002). The Eleventh Circuit's reasoning comports with the framework of the CEA and the statutory language that provides for equitable restitution. Escobio does not make any argument with respect to the CEA or equitable restitution, how it satisfies the two part test in *Kokesh*, or how the remedy sought is punitive in nature. It is only by omitting all of the analysis enumerated in *Kokesh* that Escobio is able to contend that the equitable restitution sought in this case qualifies as a "penalty."

Escobio also does not address how the remedy of SEC disgorgement in *Kokesh* relates to equitable restitution under the CEA. For example, the Court in *Kokesh*

11

emphasized that SEC disgorgement was not compensatory because it sometimes exceeded the profits gained as a result of the violation. *See Kokesh*, 137 S. Ct. at 1644 ("'[A]n insider trader may be ordered to disgorge not only the unlawful gains that accrue to the wrongdoer directly, but also the benefit that accrues to third parties whose gains can be attributed to the wrongdoer's conduct.'") (quoting *SEC v. Contorinis,* 743 F.3d 296, 302 (2d Cir. 2014). However, equitable restitution under the CEA merely seeks to require restitution to persons who have sustained losses as a result of a defendant's violations "*in the amount of such losses.*" 7 U.S.C. § 13a-1(d)(3) (emphasis added). By its statutory command, the CEA requires a specific *amount* in the remedy accorded to victims (i.e. in the amount of such losses) and mandates that the relief be provided only to those who sustained the relevant losses. Because there is no discretion provided to this Court under the CEA that allows for any recovery by the U.S. Treasury or adjustments in the recovery that the victims may receive, the problems underlying SEC disgorgement simply do not exist in this action. *See Kokesh*, 137 S. Ct. at 1638 ("Disgorged profits are paid to the district courts, which have discretion to determine how the money will be distributed. They may distribute the funds to victims, but no statute commands them to do so."). As such, nowhere in the CEA's statutory language does it suggest that equitable restitution resembles a "penalty."

Finally, Escobio presented no argument on how the primary purpose of the CEA's remedial scheme is to punish him. Escobio conspicuously failed to cite any

12

cases on this point when discussing *Kokesh* in connection with equitable restitution, and in particular the CEA.  Escobio also failed to explain how a remedy that restores restitution to persons who have sustained losses proximately caused by Escobio's violations – in the amount of those losses – is punitive in nature.  Unlike SEC disgorgement, equitable restitution does not allow for an excessive recovery above the amount of the losses suffered.  Equitable restitution also does not force individuals who did not commit a violation to pay the victims who suffered as a result of the illegal conduct.  And equitable restitution accounts for any discrepancies in the amount recoverable because the remedy is tethered to the amount of the losses.  In other words, all of the problems that the Court found with respect to SEC disgorgement are glaringly absent here.  Unlike SEC disgorgement, equitable restitution restores the victims to the status quo by providing them a recovery no greater than the amount of the loss suffered.

In sum, Escobio's reliance on *Kokesh* lack any merit because he offers no specific argument as to (1) how the remedy of SEC disgorgement applies to equitable restitution or the facts of this case, (2) how the CEA or equitable restitution is punitive in nature given Eleventh Circuit precedent holding that both are remedial, (3) how equitable restitution is not compensatory, or (4) how he can satisfy the two-part test provided in *Kokesh* to make the conclusion that equitable restitution constitutes a "penalty."  Accordingly, Escobio's discussion of *Kokesh* falls flat, lacks

the requisite factual and legal support, and demonstrates that the Court's decision has no impact on the original R&R.

### B. *The ANZ Decision*

On July 3, 2017, Escobio filed a second notice of supplemental authority and argued that the U.S. Supreme Court's recent decision in *California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 2017 WL 2722415 (U.S. June 26, 2017), also supports his objections to the original R&R. The question presented in *ANZ* was whether a three year statute of repose under the Securities Act of 1933 (the "Act") could be equitably tolled during a class action lawsuit if a plaintiff later opted out of the class action. Specifically, the Act provides a three year time limit to bring a § 11 cause of action:

> "No action shall be maintained to enforce any liability created under [§ 11] unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence . . . In no event shall any such action be brought to enforce a liability created under [§ 11] more than *three years* after the security was bona fide offered to the public . . . ."

15 U.S.C. § 77m (emphasis added).

The petitioner contended that the three year provision in the Act was subject to equitable tolling based on the Court's prior decision in *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974). Specifically, *American Pipe* recognized the traditional equitable powers of the judiciary in tolling certain statutes of limitations. However, the Court found that equitable tolling under *American Pipe* was inapplicable because the Act included an explicit statutory time bar set by Congress. The statute of

14

repose under 15 U.S.C. § 77m stated that in no event shall an action be brought more than three years after a securities offering and, on its face, the statute included no exception to this general rule. Because the statute was clear and created a fixed time bar against future liability, the Court held that the statute of repose under the Act superseded a court's equitable balancing powers. *See ANZ Sec., Inc.*, 2017 WL 2722415, at *9 ("The purpose and effect of a statute of repose . . . is to override customary tolling rules arising from the equitable powers of courts. By establishing a fixed limit, a statute of repose implements a 'legislative decisio[n] that as a matter of policy there should be a specific time beyond which a defendant should no longer be subjected to protracted liability.' . . . For this reason, the Court repeatedly has stated in broad terms that statutes of repose are not subject to equitable tolling.").

Escobio argues that the three year time bar in the statute of repose in *ANZ* is applicable to this action because the Federal Debt Collection Practices (the "FDCPA") prescribes the "exclusive civil procedures" for the government to collect on a restitution judgment. 28 U.S.C. § 3001. As such, Escobio contends that the FDCPA is no less mandatory than the statute of repose in *ANZ* because there is allegedly no express exception to the FDCPA's exclusive procedures aside from the limitation set forth in 28 U.S.C. § 3001(b). Specifically, § 3001(b) provides that "[t]o the extent that another Federal law specifies procedures for recovering on a claim or a judgment for a debt arising under such law, those procedures shall apply to such claim or judgment to the extent those procedures are inconsistent with this chapter."

15

28 U.S.C. § 3001(b).  Escobio contends that nothing in the FDCPA's statutory language yields to inherent equitable powers and neither does the rule of construction that preserves "the authority of a court . . . to exercise the power of contempt under any Federal law."  28 U.S.C. § 3003 (8)(C).  Escobio also believes that the R&R's conclusion – that inherent equitable powers of contempt displace the FDCPA's exclusive mandatory procedures – is the same kind of judge-made rule that failed in *ANZ*.  Thus, the Court's recent decision in *ANZ* purportedly reinforces the principle that mandatory statutory language overrides inherent equitable powers.  Because the R&R purportedly ignored the statutory exception in § 3001(b) in favor of inherent equitable powers, Escobio argues that the R&R's conclusion constitutes error and should not be adopted.

The gist of Escobio's reliance on *ANZ* is that a clear statutory command cannot override a court's inherent equitable powers.  However, Escobio's argument fails entirely because he misses the basis of the original R&R's conclusion, which is that the FDCPA – *by statutory command* – allows for the Court to employ its inherent equitable powers.  In other words, *ANZ* is the inverse of the issue presented in this action.  In *ANZ*, the petitioner sought to use equitable tolling despite the express language of the time limitations provided in a statutory law.  The petitioner could not rely on a single provision of the Securities Act to argue that equitable relief was allowed in that case and therefore the Court held that the language in the statutory law must control.  By contrast, the FDCPA specifically allows for a court to use the

16

power of contempt. The R&R did not recommend that the Court use the power of contempt out of thin air to override the FDCPA's statutory command. It is the FDCPA that specifically allows for a court to use the contempt power under any other federal law – i.e. the CEA. Therefore, Escobio's reliance on *ANZ* is misplaced because the case has no relevance to a statutory law that *allows* for the imposition of equitable relief vis-à-vis the power of contempt.

In his objections, Escobio continues to argue that the Rules of Construction do not help Plaintiff's Motion because of the limitation provided under § 3001(b). *See* 28 U.S.C. § 3001(b) ("To the extent that another Federal law specifies procedures for recovering on a claim or a judgment for a debt arising under such law, those procedures shall apply to such claim or judgment to the extent those procedures are inconsistent with this chapter."). There is no doubt that the debt collection procedures outlined in the FDCPA are deemed "exclusive" under the statute, 28 U.S.C. §§ 3001(a)(1). But a relevant exception to this principle is the limitation found in the Rules of Construction provision, section 3003(b)(2), that clarifies that the FDCPA does not "curtail or limit the right of the United States under any other Federal law or any State law . . . to collect any fine, penalty, assessment, restitution, or forfeiture arising in a criminal case." 28 U.S.C. § 3003(b)(2). The next subsection adds that "[t]his chapter shall not be construed to supersede or modify the operation of . . . (7) any Federal law authorizing, or any inherent authority of a court

17

to provide, injunctive relief; (8) the authority of a court . . . (C) to exercise the power of contempt under any Federal law . . . ."  28 U.S.C. § 3003(c).

Escobio never presents a persuasive argument as to why these Rules of Construction do not apply or how they might be inconsistent with § 3001(b).  Escobio only argues that § 3001(b) is inconsistent with the power of contempt in § 3003(c)(8) yet never explains how or why.  Escobio's position essentially makes the Rules of Construction irrelevant because § 3001(b) is purportedly the only provision that matters with respect to any exceptions that exist under the FDCPA.  While Escobio alleges that the Court is subverting the plain language of the FDCPA, it is actually Escobio that is attempting to omit sections of the statute.  Escobio's position also begs the question on the purpose of the power of contempt provided under the Rules of Construction because it purportedly serves no use given the limitation set forth in § 3001(b).  In other words, Escobio's argument suggests that – despite the plain language of the FDCPA – Congress did not actually intend for any court to ever use the power of contempt under any federal law because it is somehow inconsistent with § 3001(b).  Despite these lingering questions, Escobio avoids any substantive discussion (1) of the Rules of Construction, (2) how they might actually apply, (3) when the contempt power would ever be available under the FDCPA, or (4) why the contempt power is inconsistent with § 3001(b).

Finally, Escobio's position is inconsistent with both Supreme Court and Eleventh Circuit precedent because "[t]he 'cardinal canon' of statutory interpretation

is that 'courts must presume that a legislature says in a statute what it means and means in a statute what it says there.'" *United States v. Aldrich*, 566 F.3d 976, 978 (11th Cir. 2009) (quoting *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54 (1992)). "[S]tatutes should be construed so that 'no clause, sentence, or world shall be superfluous, void, or insignificant.'" *Aldrich*, 566 F.3d at 979 (quoting *United States v. Ballinger,* 395 F.3d 1218, 1236 (11th Cir. 2005)). Escobio does not address any of the questions mentioned above nor does he refer the Court to any authority or canon of statutory construction that supports his view of the FDCPA. Because Escobio's position is inconsistent with established law and lacks any authority or persuasive reasons that support his interpretation of the FDCPA, we recommend that none of Escobio's objections alter the conclusion that Plaintiff's Motion should be **GRANTED in part** and **DENIED in part**.

## II.     CONCLUSION & RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that Plaintiff's Motion be **GRANTED in part** and **DENIED in part**. The Supreme Court's decisions in *Kokesh* and *ANZ* have no bearing on the merits of Plaintiff's Motion and do not affect the R&R's holding that equitable restitution is subject to the power of contempt.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal

issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  See 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida this 6th day of July, 2017.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge