UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:14-CV-22739-JLK

U.S. COMMODITY FUTURES TRADING
COMMISSION,

       Plaintiff,

v.

SOUTHERN TRUST METALS, INC.,
LORELEY OVERSEAS CORPORATION,
and ROBERT ESCOBIO,

       Defendants.

_____/

## ORDER DENYING DEFENDANT ROBERT ESCOBIO'S MOTION FOR RECONSIDERATION

THIS MATTER is before the Court on Defendant Robert Escobio's Expedited Motion to Alter, Amend and Reconsider Order Finding Escobio in Contempt and Order Directing Surrender and Indefinite Incarceration, filed April 9, 2019 (DE 314) (the "Motion for Reconsideration").[1]

### I. PROCEDURAL BACKGROUND

#### A.    Proceedings Leading Up to Contempt Hearing

Following a three-day bench trial in this enforcement action, on August 29, 2016, the Court entered final judgment against Robert Escobio and ordered him to pay $1,543,892 in restitution in connection with the leveraged metals scheme at issue in this case. *See* DE 167.[2] Escobio was ordered to make the restitution payment within ten days of the Final Judgment. *Id.*

---

[1] The Court has also considered Plaintiff CFTC's Opposition, filed April 23, 2019 (DE 331).

[2] On appeal, the Eleventh Circuit affirmed the portion of the Final Judgment awarding $1,543,892 in restitution for the leveraged metals scheme. *See* DE 257.

On March 21, 2017, the CFTC moved for an order to show cause why Escobio should not be held in contempt on grounds that Escobio had paid "virtually nothing towards his restitution or [civil monetary penalty] obligations" since the Final Judgment was entered nearly seven months earlier. *See* DE 195. On September 20, 2017, the Court entered its Order to Show Cause and set the matter for evidentiary hearing. *See* DE 228.

Although the hearing was originally set for November 6, 2017, various intervening motions caused the hearing to be rescheduled. Escobio, for example, twice moved for continuances (which the Court granted) as his wife, Susan Escobio, was undergoing medical treatments that prevented the Escobios from being able to prepare for and participate in the scheduled hearings. *See* DE 229, 232, DE 230, DE 231, DE 233. Escobio also moved to vacate the show-cause order and quash a subpoena duces tecum served on Mrs. Escobio. *See* DE 237, DE 240. Both motions were denied, but the hearing was pushed back several months while they were pending. *See* DE 243, DE 248.

### B.    Two-Day Evidentiary Hearing and the Court's Findings

Ultimately, on September 20, 2018—a year after the Order to Show Cause was entered—the hearing was reset for October 24, 2018. *See* DE 249.[3] During the two-day evidentiary hearing that followed, the Court heard live witness testimony from three witnesses, including Escobio, and admitted voluminous exhibits into evidence spanning thousands of pages of documents. *See* DE 255, DE 258, DE 259, DE 268, DE 269. At the end of the hearing, the Court took the matter under advisement and directed the parties to submit proposed findings of fact and conclusions of law on

---

[3] Mrs. Escobio filed a non-party declaration in the run-up to the hearing. *See* DE 252-1. In the declaration, Mrs. Escobio stated that she is suffering from a serious illness and was under doctor's orders to avoid stress. *Id.* ¶ 6.

2

the Order to Show Cause, which the Court received on February 22, 2019. *See* DE 269, 10/24/18

Tr. 162–64; DE 275–277.[4]

On March 18, 2019, the Court entered its Order Finding Robert Escobio in Contempt. *See*

DE 281. At the hearing, it was undisputed that Escobio had not substantially complied with his

restitution obligations under the Final Judgment, having paid just $3,525 toward the award since

the Final Judgment was entered. *Id.* at 8. Instead, his primary argument—and the subject of the

evidentiary hearing—was that he was unable to comply, because he lacked the funds to do so. *Id.*

at 9. But the Court found that Escobio failed to demonstrate an inability to comply with the Final

Judgment, which requires a contemnor to establish that he or she made "in good faith all reasonable

efforts" to comply. *See id.* at 6, 9; *In re Lawrence*, 279 F.3d 1294, 1297 (11th Cir. 2002). More

specifically, based on the extensive record evidence presented at the hearing, the Court found that

Escobio's available assets and spending decisions contradicted his argument that he had made "all

reasonable efforts" to comply with the Final Judgment. *See id.* at 18.

As to Escobio's assets, the evidence showed that Escobio had *at least* $941,447 in available

assets, including roughly $300,000 in his individual retirement account (the "IRA"); $554,000 in

equity in a Florida property co-owned with his wife; and $35,000 in a securities investment account

along with another $3,000 in a joint checking account co-owned with his wife. *Id.* at 9.[5]  Escobio

also testified that he owned approximately $21,000 in personal property, and offered no excuse for

---

[4] Five days later, Escobio filed a petition for writ of prohibition with the Eleventh Circuit seeking
to have this Court "cease proceedings on its Order to show cause." DE 278-1 at 9. After a couple
weeks passed without a decision on the petition, the Court entered a notice to the parties explaining
that the Court had completed its written decision on the Order to Show Cause, but intended, at that
point, to await advice from the Eleventh Circuit on the proper procedure for the court to take. *See*
DE 280. Escobio's petition was denied shortly thereafter.

[5] The Court rejected Escobio's argument that alleged state-law exemptions barred consideration
of these assets in evaluating his inability defense. *See id.* at 9–11.

not attempting to sell any of his personal property to help satisfy the restitution award. *Id.* at n.2. Also, the Court rejected Escobio's testimony that his income was limited to the $30,000 to $40,000 per year he makes as a pilot, and instead found that it was appropriate to consider Mrs. Escobio's six-figure salary as president of Southern Trust Securities in analyzing the inability arguments. *Id.* at 13, 15. Importantly, the Court also found that Escobio received various funds from unidentified foreign sources, and found that his explanation for these funds lacked credibility—he claimed that they were "loans" he took out post-judgment. *Id.* at 15, 17.

The Court found that Escobio had also made deliberate choices to prioritize his expenses and other obligations over making payments under the Court's Final Judgment. *See, e.g., id.* at 10–13. For example, the evidence showed that Escobio withdrew roughly $250,000 from his IRA, mostly to pay legal fees in connection with this litigation. *Id.* at 10. Also, Escobio's substantial discretionary payments since the Final Judgment belied his inability arguments. *See id.* at 12–13. In stark contrast to the *de minimis* $3,525 paid to the restitution fund since the Final Judgment was entered, the record evidence showed that Escobio had spent hundreds of thousands of dollars on attorneys, credit cards, student loan payments for his adult daughters, and car leases. *Id.* Indeed, he paid more than twice as much for Comcast cable as he paid toward the restitution fund each month. *Id.* at 13 n.4. Yet another expense Escobio decided to prioritize over his obligations under the Final Judgment was his travel abroad, taking several trips to Spain and numerous other destinations after the Final Judgment was entered. *Id.*

Based on the extensive record evidence and testimony presented at the two-day evidentiary hearing, the Court found that Escobio had not in good faith made all reasonable efforts to comply. *Id.* Accordingly, the Court held Escobio in contempt, and ordered him to pay $350,000 within ten

days and commence making payments of $10,000 per month towards the balance of the restitution award or face coercive sanctions in the form of incarceration. *Id.* at 19.[6]

Escobio failed to pay the required purge amounts within ten days, and instead elected to surrender himself to the custody of the U.S. Marshals Service on April 1, 2019. *See* DE 298.

### C.    New Counsel Appears for Escobio and Files Motion for Reconsideration

On April 9, 2019, new counsel appeared on behalf of Escobio and filed the instant Motion for Reconsideration. *See* DE 314.[7] The Motion seeks relief under Federal Rules of Civil Procedure 59(e) and 60(b)(6).

According to the Motion, just before surrendering, Escobio ordered the liquidation of his IRA, which now had only $136,255.37 in available funds after payment of income taxes and other unspecified withdrawals. *Id.* at 2. Escobio argues that the Court overlooked that one-third of the funds withdrawn from the IRA must be paid to the IRS for income taxes due. *Id.* at 15.

Escobio also argues that the Court "overlooked or did not have [certain] facts to consider" in reaching its contempt findings. *See* DE 314 at 14–15. For example, as to the Escobios' Florida property, Escobio contends that the $500,000-plus in equity "could not be used to obtain a loan or reverse mortgage, because the Escobios have insufficient income and the residence has insufficient

---

[6] Escobio then appealed and moved to stay the Order Finding Escobio in Contempt. *See* DE 283, 287, 305. Although the motion to stay was denied, the appeal remains pending before the United States Court of Appeals for the Eleventh Circuit. *See* DE 295.

[7] Despite the "expedited" designation (*see* Docket Sheet, DE 314), Escobio failed to comply with the Local Rules governing expedited motions, which require the movant to "set forth in detail the date by which an expedited ruling is needed and the reason the ruling is needed by the stated date." S.D. Fla. L.R. 7.1(d)(2). Escobio then filed another expedited motion on April 17, 2019, requesting a ruling or hearing on or before Friday, April 19, 2019, based on Escobio's continued incarceration. *See* DE 322.

equity." *See id.* at 2.[8]  He also argues that his continued confinement "will result in his permanent

loss of employment as a pilot, which currently is his sole source of income." *Id.* at 3.  Additionally,

he contends the Court's findings "do not consider Mrs. Susan Escobio's serious health conditions,

her age (62), and the decrease in Mrs. Escobio's ability to earn the funds imputed to Robert Escobio

after she was diagnosed with cancer and commenced treatments." *Id.*

## II.  LEGAL STANDARD

Under Rule 59(e), a party may move to alter or amend a judgment within 28 days after the

entry of the judgment.  Fed. R. Civ. P. 59(e).  Rule 60(b)(6), described as the "catchall provision,"

*Wells for Chambers v. Talton*, 695 F. App'x 439, 447 (11th Cir. 2017), authorizes relief for "any

other reason that justifies relief."  Rule 60(b)(6) is "an extraordinary remedy which may be invoked

only upon a showing of exceptional circumstances."  *Hisey v. Qualtek USA, LLC*, 753 F. App'x

698, 702 (11th Cir. 2018) (quoting *Crapp v. City of Miami Beach*, 242 F.3d 1017, 1020 (11th Cir.

2001)).

The Eleventh Circuit has recognized that "[t]he only grounds for granting a Rule 59 motion

are newly-discovered evidence or manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335,

1343 (11th Cir. 2007) (quoting *In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999)).  "A Rule

59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could

have been raised prior to the entry of judgment." *Arthur*, 500 F.3d at 1343; *see also Michael Linet,

Inc. v. Vill. of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005).  To support a Rule 59(e)

motion based on newly discovered evidence, the moving party "must show either that the evidence

is newly discovered or, if the evidence was available at the time of the decision being challenged,

---

[8] As the CFTC notes in its Opposition (DE 331 at 8 n.5), this argument is based on unverified
screenshots, computer printouts, and letters from SunTrust and QuickenLoans (*see* DE 314-2, DE
314-3, and DE 321-1).

that counsel made a diligent yet unsuccessful effort to discover the evidence." *Wells*, 695 F. App'x at 445 (quoting *Chery v. Bowman*, 901 F.3d 1053, 1057 n.6 (11th Cir. 1990)).

## III. DISCUSSION

Escobio's Motion for Reconsideration fails to justify relief under Rules 59(e) or 60(b)(6). To be sure, the Motion does not argue that the Court made any errors of law, manifest or otherwise. And while Escobio argues that the Court "overlooked" or "did not have" certain facts to consider, the Motion fails to identify any "manifest errors of fact" or "newly discovered evidence" justifying reconsideration of the Court's findings.  Instead, the Motion is based solely on issues that either were or could have been raised during the two-day evidentiary hearing in October 2018.

For example, Escobio's argument that only $136,255.37 was available upon liquidation of his IRA is clearly something that could have been raised at the hearing.  Whether the difference in the amount of available funds is attributable to withdrawals for "existing loans and debts" (*id.* at 7), income tax payments (*id.* at 6–7), or some other reason, the Motion offers no explanation as to why this issue could not have been raised at the hearing.  Instead, the Motion states that Escobio's counsel "generally alerted the Court of the requirement for taxes to be deducted" at a later, March 22, 2019 hearing. *Id.* at 7 n.3.  In the CFTC's Opposition, the CFTC argues that this was "too little and several months too late."  DE 331 at 6 n.2.  The Court agrees.  Escobio had more than a year after the Order to Show Cause was entered to obtain evidence regarding his IRA assets prior to the evidentiary hearing.  Thus, there was ample time both before and during the hearing to raise these issues, and doing so for the first time on a motion for reconsideration is improper.

Nor does Escobio's continued incarceration (or resulting damage to his employability as a pilot) justify relief.  *See* DE 314 at 3–4.  The Supreme Court has described indefinite incarceration as the "paradigmatic" coercive civil contempt sanction. *Int'l Union, United Mine Workers of Am.*

7

*v. Bagwell*, 512 U.S. 821, 823 (1994).  And Escobio cannot use the very sanction chosen to coerce his compliance with the Final Judgment as an excuse to be released from incarceration.  *See CFTC v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1531 (11th Cir. 1992) ("Prison time, in and of itself, will not satisfy [the contemnor's] burden of proving that there exists no 'realistic possibility' that he can comply with the court's contempt order."); *see also FTC v. Leshin*, No. 06-61851-CIV, 2011 WL 617500, at *25 (S.D. Fla. Feb. 15, 2011) (Simonton, M.J.), *report and recommendation adopted,* 2011 WL 845065 (S.D. Fla. Mar. 8, 2011) (Ungaro, J.) (incarceration was appropriate sanction to coerce compliance with disgorgement order).  Thus, Escobio's incarceration argument does not justify reconsideration.

As to Escobio's claimed inability to obtain loans using the equity in his Florida home, even if the Court were to consider the unattested evidence submitted with the Motion—unaccompanied by actual loan applications or sworn statements regarding Escobio's efforts to obtain loans—there is no reason why Escobio could not have raised this issue at the hearing.[9]

Similarly, Escobio's argument regarding his wife's medical issues and earnings could have been raised prior to the contempt finding.  Based on Escobio's two continuance motions and Mrs. Escobio's non-party declaration, these issues were known over a year before the hearing.  *See* DE 229 ¶ 2, DE 252-1 ¶ 6.  The Court sympathizes with Mrs. Escobio, but the time to raise this issue was during the two-day hearing where ample evidence was presented and considered on Escobio's inability argument.

---

[9] The Court also notes that Escobio makes no mention of any other efforts to use the equity in the Florida property to satisfy the restitution award, including any efforts to sell or rent the property. *See SEC v. Greenberg*, 105 F. Supp. 3d 1342, 1348 (S.D. Fla. 2015) (Hurley, J.) (holding that contemnor failed to show present inability to comply where "reasonable efforts to comply" with judgment "could include "selling or renting the New York home, selling or renting the Miami condominium, terminating the lease on the luxury cars," and so forth).

Finally, Escobio makes no effort to address the Court's findings regarding any of the other substantial assets considered in evaluating Escobio's inability defense, including, for example, the $200,000 to $300,000 from unidentified foreign sources paid into Escobio's bank account between the time the Final Judgment was entered and the October 2018 hearing.  Nor does Escobio address the Court's findings regarding the discretionary expenses found to be improperly prioritized over his obligations under the Final Judgment. *See id.* at 12–13.[10]

## IV.  CONCLUSION

In short, Escobio fails to demonstrate any manifest error of law or fact, newly discovered evidence, or any exceptional circumstances justifying reconsideration of the Court's Order Finding Escobio in Contempt.  Therefore, it is ORDERED, ADJUDGED and DECREED that the Motion for Reconsideration filed April 9, 2019 (DE 314) be and the same is hereby **DENIED.**

It is further ORDERED and ADJUDGED that Escobio's Expedited Motion for Hearing and Ruling on the Motion for Reconsideration, filed April 17, 2019 (DE 322) be and the same is hereby **DENIED AS MOOT.**

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, at Miami, Florida, this 29th day of April, 2019.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

cc:    **All Counsel of Record**

---

[10] While the CFTC addresses Escobio's current financials based on additional evidence submitted with its Opposition (*see, e.g.*, DE 331 at 8–10), in light of the Court's conclusion that the Motion lacks merit under Rules 59(e) or 60(b)(6), the Court need not consider such additional evidence in deciding on the Motion.