# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

CASE NO.: 1:14-CV-22739-JLK

U.S. COMMODITY FUTURES TRADING
COMMISSION,

    Plaintiff,

v.

SOUTHERN TRUST METALS, INC.,
LORELEY OVERSEAS CORPORATION,
and ROBERT ESCOBIO,

    Defendants.
_____/

## ORDER IMPOSING DISGORGEMENT ON REMAND

THIS MATTER comes before the Court on remand from the United States Court of Appeals for the Eleventh Circuit with instructions to consider equitable remedies other than restitution with respect to Defendants' registration violations that are the subject of Count 4 of the CFTC's Complaint. *See CFTC v. S. Tr. Metals, Inc.*, 894 F.3d 1313, 1319, 1331–32 (11th Cir. 2018).

## I. BACKGROUND[1]

### A. The Eleventh Circuit's Opinion and Instructions on Remand

In its opinion issued July 12, 2018, the Eleventh Circuit affirmed this Court's Final Judgment entered against Southern Trust Metals, Inc. ("ST Metals") and Robert Escobio

---

[1] The Court assumes familiarity with the factual background of this case and will therefore only discuss the facts pertinent to this order. The facts and procedural history are discussed more fully in the Court's prior orders and factual findings. *See* DE 122, DE 166, DE 167.

for violations of the Commodity Exchange Act (the "CEA"). In addition to affirming the Court's findings of liability under all four counts of the CFTC's Complaint, the Eleventh Circuit affirmed the Court's issuance of injunctive relief, civil penalties, and $1,543,892 in restitution for the leveraged-metals scheme at issue in Counts 1 through 3 of the CFTC's Complaint. *See S. Tr. Metals*, 894 F.3d at 1331–32.

At the same time, the Eleventh Circuit vacated the $559,725 restitution award for customer losses associated with Defendants' unregistered-futures scheme, which involved the futures and options transactions at issue in Count 4. *Id.* The Eleventh Circuit reasoned that restitution is restricted to "losses proximately caused by [the] violation," and there was insufficient evidence to show that Defendants' failure to register before accepting money and orders from the futures and options customers was the proximate cause of the trading losses suffered by those customers. *See id.* at 1331 (emphasis added).

As a result, the Eleventh Circuit remanded with instructions to consider whether any other equitable remedy is appropriate. *Id.* In doing so, the Eleventh Circuit "particularly note[d] the statutory subsection under which the court may order the disgorgement of gains, in appropriate circumstances, *without regard to proximate cause*." *Id.* (citing 7 U.S.C. § 13a-1(d)(3)) (emphasis added).

## B. The Parties' Submissions

On remand, the Court entered an order directing the parties to file briefs addressing (1) the appropriate remedy for Defendants' registration violations and (2) the appropriate amount to be awarded. *See* DE 267.

The CFTC submitted its brief on March 5, 2019. *See* DE 279. The CFTC argues that disgorgement is the appropriate remedy, and that $360,337 is the appropriate amount. *Id.* at 2. The CFTC notes that, unlike restitution, which is restricted to "losses proximately caused" by the violation, disgorgement may be ordered upon a showing of "gains received in connection with" a violation. *Id.* at 7 (quoting §§ 13a-1(d)(3)(A), (B)). Applying that "gains received" language here, the CFTC contends that disgorgement in the amount of $360,337 is appropriate based on the Court's finding that ST Metals charged commissions to its futures customers in the amount of $360,337. *Id.* at 8 (citing Aug. 29, 2016 Findings of Fact and Conclusions of Law at 10, DE 166).

On March 22, 2019, Defendants filed their opposing brief arguing that disgorgement is improper and that no other remedies should be imposed for their registration violations. *See* Defs.' Br., DE 294. Defendants first argue that the CFTC waived the right to pursue disgorgement by only including restitution in its proposed findings of fact and conclusions of law. *Id.* at 4. Defendants also contend that Escobio cannot be held jointly and severally liable for disgorgement with ST Metals because there was no record evidence showing that Escobio himself received any of the commissions. *Id.* at 5–8. Also, Defendants argue that disgorgement cannot be ordered against ST Metals either, because, under their reading of the case law, "proximate cause must be shown in every federal cause of action," and the CFTC cannot satisfy the proximate cause requirement for disgorgement. *Id.* at 8.

In addition to challenging disgorgement as a remedy, Defendants contest the amount proposed by the CFTC. According to Defendants, disgorgement is measured by "net gains, taking account of expenses," and here, the CFTC "presented no evidence to demonstrate

3

Southern Trust Metals' net gains, accounting for expenses associated with the transactions and commissions split with brokers." *Id.* at 10–11. Finally, Defendants argue that such an award would amount to an excessive fine in violation of the Eighth Amendment. *Id.* at 11.

## II. DISCUSSION

### A. Disgorgement Under the Commodity Exchange Act

Section 13a-1(d)(3) of the CEA codifies the equitable remedies that may be imposed for violations of the statute. It reads:

> In any action brought under this section, the Commission may seek, and the court may impose, on a proper showing, on any person found in the action to have committed any violation, equitable remedies including--
>
> . . .
>
> (B) disgorgement of gains received in connection with such violation.

7 U.S.C. § 13a-1(d)(3)(B). As summarized by the Eleventh Circuit, the CEA "authorizes district courts to impose equitable remedies, including disgorgement, upon a finding that the defendant has violated any of its provisions." *CFTC v. Amerman*, 645 F. App'x 938, 943 (11th Cir. 2016).

"Disgorgement is an equitable remedy intended to prevent unjust enrichment." *SEC v. Monterosso*, 756 F.3d 1326, 1337 (11th Cir. 2014). To support a disgorgement order, "[t]he CFTC need only 'produce a reasonable approximation of a defendant's ill-gotten gains.'" *Amerman*, 645 F. App'x at 943 (quoting *SEC v. Calvo*, 378 F.3d 1211, 1217 (11th Cir. 2004)); *CFTC v. Sidoti*, 178 F.3d 1132, 1138 (11th Cir. 1999). "Exactitude is not a requirement; so long as the measure of disgorgement is reasonable, any risk of uncertainty

4

should fall on the wrongdoer whose illegal conduct created that uncertainty." *Amerman*, 645 F. App'x at 943 (internal quotation marks omitted).

## B. Disgorgement is Appropriate for Defendants' Registration Violations

Under the CEA, disgorgement may be ordered on a "proper showing [that a person has] committed *any* violation" of the statute. *Amerman*, 645 F. App'x at 944 (emphasis in original). The Eleventh Circuit has recognized that "'[a]ny violation' includes registration violations." *Id.*[2] Accordingly, disgorgement would be appropriate for any gains received in connection with Defendants' registration violations. As discussed below, the Court finds that such gains are adequately supported by the record.

At the summary judgment stage, the Court found both ST Metals and Escobio liable as a matter of law for the registration violations that were asserted in Count 4 of the CFTC's Complaint. *See* DE 122 at 9–10. Those violations involved Defendants accepting money and orders for commodity futures and options trades without having registered as a "futures commission merchant" with the Commission. DE 122 at 10; *see also* Compl. Count 4, DE 1.[3] Moreover, the Court's factual findings described the "losses" and "gains" stemming

---

[2] As the Court previously explained (DE 166 at 20), the unregistered futures scheme was no mere technical violation of the law. *See Stotler & Co. v. CFTC*, 855 F.2d 1288, 1293 (7th Cir. 1988) ("Registration is the kingpin in the statutory machinery of the Commodity Exchange Act, giving the Commission the information about participants in commodity trading which it so vitally requires to carry out its other statutory functions of monitoring and enforcing the Act.") (brackets omitted).

[3] Specifically, Defendants violated § 6d(a) of the CEA, which makes it unlawful "to be a futures commission merchant" without first registering with the Commission. 7 U.S.C.A. § 6d(a). A "futures commission merchant" is defined to include, among other things, a person who is engaged in accepting orders for the purchase or sale of a commodity for future delivery or any commodity option. *Id.* § 1a(28).

from this unregistered futures scheme. *See* DE 166 at 9–10. Although the Court's findings focused primarily on customer losses, the Court also described gains received by ST Metals in finding that it charged commissions to its futures customers in the amount of $360,337. *Id.* at 10; *see also* Final Judgment at 6 (describing "the total monetary gain to Defendants of $360,337" as the amount that ST Metals "charged its[] futures customers in connection with the violations . . . described in Count 4 of the Complaint").

Accordingly, the Court's prior orders and findings support the conclusion that the commissions charged to ST Metals's futures customers constitute ill-gotten gains received in connection with Defendants' registration violations, and that $360,337 is a "reasonable approximation of [those] ill-gotten gains," *Amerman*, 645 F. App'x at 943.

## C. Defendants' Arguments Against Disgorgement

### 1. Waiver

Defendants argue that the CFTC waived any right to request disgorgement by only including *restitution* in its post-trial briefing and proposed findings of fact and conclusions of law. Defs.' Br. 4.

The Court respectfully disagrees. Defendants cite no case law from the Eleventh Circuit on this issue, and the record does not support Defendants' argument that the CFTC failed to request disgorgement at trial. *Id.* Indeed, the CFTC specifically stated: "For the futures, the unregistered futures claims the CFTC is seeking disgorgement of $360,334." Trial Tr. 45:25–46:2, DE 161.

6

## 2. Joint and Several Liability

Defendants also argue that Mr. Escobio cannot be held jointly and severally liable for disgorgement with ST Metals, because there was no evidence or finding that Escobio himself received any of the commissions. Defs.' Br. 5–8.

The Court is not persuaded. The Eleventh Circuit has specifically recognized that "[d]isgorgement . . . may be joint and several." *See FTC v. WV Universal Mgmt., LLC*, 877 F.3d 1234, 1239 (11th Cir. 2017). Indeed, the Eleventh Circuit has affirmed joint-and-several disgorgement awards in several cases where defendants made the same argument that Escobio raises here. *See, e.g., FTC v. Williams, Scott & Associates*, 679 F. App'x 836, 839–40 (11th Cir. 2017) (affirming joint-and-several disgorgement award over defendant's argument that "he should be responsible only for the amount he personally received"); *WV Universal Mgmt.*, 877 F.3d at 1243 (affirming joint-and-several disgorgement award over defendant's argument that "it can be forced to disgorge only the amount it retained"); *SEC v. Monterosso*, 557 F. App'x 917, 928–29 (11th Cir. 2014) (affirming joint-and-several disgorgement award over defendant's argument that "it would be inequitable to hold him liable for disgorgement when he did not receive proceeds"). Moreover, because the Court found as a matter of law that Escobio was a "controlling person" under the CEA, he "may be held liable for [the] violation . . . to the same extent as [the] controlled person"—*i.e.*, jointly and severally with ST Metals. *See* 7 U.S.C.A. § 13c(b).

In their brief, Defendants rely heavily on the Supreme Court's decision in *Honeycutt v. United States*, 137 S. Ct. 1626, 1635 (2017). In *Honeycutt*, the Supreme Court held that a criminal forfeiture statute did not permit a defendant to be held jointly and severally liable

7

for property that his co-conspirator derived from the crime, but that the defendant himself did not acquire. *Id.* at 1630. Applying that reasoning here, Defendants argue that the CEA similarly does not permit disgorgement against Escobio, where there is no evidence that he personally received the commissions charged by ST Metals. *See* Defs.' Br. 5.

Defendants' reliance on *Honeycutt* is misplaced. Unlike the defendant in *Honeycutt*, the record supports the finding that Escobio *did* receive monetary gains in connection with the registration violations. *See, e.g.*, Aug. 29, 2016 Findings of Fact and Conclusions of Law at 24 (finding that "*Defendants'* monetary gain from the transactions at issue" includes "*the commissions charged in connection with the unregistered futures sales*") (emphasis added); Apr. 7, 2016 Order Granting Partial Summary Judgment at 10 (finding Escobio liable as the controlling person of ST Metals, noting that he was "the largest shareholder in the Holding Company, which owns both ST Metals and Loreley" and "a signatory to ST Metals and Loreley's bank accounts, and had authority to transfer money to and from those accounts").

In any event, the Court does not agree that the criminal forfeiture statute discussed in *Honeycutt* is analogous to the CEA's disgorgement provision at issue here. Unlike the forfeiture statute, which applies only to the particular defendant who obtained the tainted property, the CEA's disgorgement provision applies to "any person found in the action to have committed any violation"—regardless of whether that person was also the one who personally "received" the ill-gotten gains. *Compare* 21 U.S.C. § 853(a)(1), *with* 7 U.S.C. § 13a-1(d)(3).

8

### 3. Proximate Cause

Defendants next argue that "proximate cause must be shown in every federal cause of action," and that there is no evidence showing that customers authorized the futures and options trades *because of* Defendants' "presumed registered future commission merchant status." Defs.' Br. 10 (citing *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1305 (2017)). The Court is not persuaded by Defendants' proximate cause argument.

In remanding this case, the Eleventh Circuit expressly observed that disgorgement may be ordered, "in appropriate circumstances, *without regard to proximate cause*." *S. Tr. Metals*, 894 F.3d at 1331 (emphasis added). Also, the Court disagrees with Defendants' reading of the Supreme Court's *Bank of America* opinion as requiring proximate cause "in every federal cause of action." *See* Defs.' Br. 8. Instead, the Supreme Court stated that proximate cause is required "in all cases of *loss*," *Bank of Am.*, 137 S. Ct. at 1305 (emphasis added), such as the City's alleged loss of property-tax revenue. But disgorgement "focuses on 'ill-gotten gains,' not the victim's losses." *Amerman*, 645 F. App'x at 944. Thus, the Court does not agree that disgorgement requires a showing of proximate cause.

### 4. Deduction of Expenses

Next, Defendants contend that the CFTC's proposed amount of disgorgement is not supported by the record, arguing that no evidence was presented to show ST Metals's "net gains, accounting for expenses associated with the transactions and commissions split with brokers." Defs.' Br. 10. According to Defendants, the Supreme Court in *Kokesh v. SEC*, 137 S. Ct. 1635, 1644–45 (2017), "held traditional common law disgorgement measures net gains, taking account of expenses." *Id.* at 11.

9

The Eleventh Circuit has already answered this question, agreeing with the Second Circuit's view that "defendants in a disgorgement action are not entitled to deduct costs associated with committing their illegal acts." *FTC v. Wash. Data Res., Inc.*, 704 F.3d 1323, 1325 (11th Cir. 2013) (internal quotation marks omitted); *see also SEC v. Aerokinetic Energy Corp.*, 444 F. App'x 382, 385 (11th Cir. 2011) (affirming disgorgement award and rejecting argument that district court "should have offset [the defendants' ill-gotten gains] by the $538,518 in expenses they legitimately incurred," noting the cases "overwhelmingly hold that how a defendant chooses to spend his ill-gotten gains, whether it be for business expenses, personal use, or otherwise, is immaterial to disgorgement") (internal quotation marks omitted).

Moreover, the Court does not agree with Defendants' reading of the *Kokesh* opinion. The narrow issue in *Kokesh* was simply whether an SEC disgorgement action is subject to the five-year statute of limitations governing actions for the enforcement of a civil penalty. *See Kokesh*, 137 S. Ct. at 1642 n.3. Also, the Court noted that disgorgement "sometimes is ordered without consideration of a defendant's expenses," *see id.* at 1644, and carefully disclaimed reaching any holding on the propriety of such disgorgement orders, *see id.* at 1642 n.3 ("Nothing in this opinion should be interpreted as an opinion . . . on whether courts have properly applied disgorgement principles in this context.").

5.  **Excessive Fines Clause**

Finally, Defendants make a constitutional argument, arguing that "Mr. Escobio has already paid or been held liable for a total of $425,000 in fines and civil monetary penalties, stretching back to the NFA enforcement action that preceded this case." *See* Defs.' Br. 11.

10

"To tack another penalty on top of these penalties," Defendants argue, "would amount to an excessive fine in violation[] of the Eighth Amendment." *Id.*

The Court respectfully disagrees with Defendants' Eighth Amendment argument. The Eighth Amendment's prohibition on "excessive fines" "limits the government's power to extract payments . . . as punishment for some offense." *Timbs v. Indiana*, 139 S. Ct. 682, 688 (2019). Even assuming disgorgement could be considered "punishment" subject to the Excessive Fines Clause, ordering Defendants to return the commissions they charged while acting as an unregistered futures merchant is hardly "excessive." As the Court found after holding a three-day bench trial, Defendants' violations were "egregious, systematic, and calculated." Findings of Fact and Conclusions of Law at 24. Indeed, while courts in this Circuit have issued penalties representing *triple* the monetary gain to defendants in comparable cases, *see id.* (citing cases), this Court imposed a penalty totaling just *one-third* of Defendants' monetary gain, in part because Defendants were already required to make full restitution to their victims. A significant portion of that restitution obligation has now been vacated, however, and a $360,337 disgorgement order is still far less than triple the monetary gain that could have been imposed as a civil penalty.

## III. CONCLUSION

Accordingly, based on the foregoing factual findings and legal authority, the Court hereby finds that disgorgement in the amount of $360,337 is appropriate for Defendants' registration violations at issue in Count 4 of the CFTC's Complaint, which shall replace the $559,725 restitution award vacated by the Eleventh Circuit as set forth in the Court's August 29, 2016 Final Judgment (DE 167).

Pursuant to Fed. R. Civ. P. 58(a), a judgment setting forth the specific terms of the disgorgement award will be set out in a separate document.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, at Miami, Florida, this 30th day of May, 2019.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

**cc:** **All Counsel of Record**